## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

ALI N. MORSHED

    *Petitioner*,

       v.

DONALD TRUMP, President of the United
States; U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); U.S.
CUSTOMS AND BORDER PROTECTION
("CBP"); JOHN KELLY, Secretary of DHS;
KEVIN K. MCALEENAN, Acting
Commissioner of CBP; and JAMES T.
MADDEN, New York Field Director, CBP,

    *Respondents*.

Case No. _____

Date: January 29, 2017

## PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Petitioner ALI N. MORSHED, a lawful permanent resident of the United States and Yemeni national, landed at John F. Kennedy International Airport ("JFK Airport") at or about 2:15pm on January 29, 2017.

Despite these facts and Petitioner's valid entry documents, U.S. Customs and Border Protection ("CBP") blocked Petitioner from exiting the terminal and detained Petitioner therein. No magistrate has determined that there is sufficient justification for the continued detention of Petitioner.  Instead, CBP is holding Petitioner at JFK Airport solely pursuant to an executive order issued on January 27, 2017.

Because the executive order is unlawful as applied to Petitioner, his continued detention based solely on the executive order violates his Fifth Amendment procedural and substantive due process rights, violates the First Amendment Establishment Clause, is ultra vires the immigration statutes, and violates the Administrative Procedure Act and Religious Freedom Restoration Act. Further, Petitioner's continued unlawful detention is part of a widespread pattern applied to many refugees and arriving aliens detained after the issuance of the January 27, 2017 executive order. Therefore, Petitioner respectfully applies to this Court for a writ of habeas corpus to remedy his unlawful detention by Respondents, and for declaratory and injunctive relief to prevent such harms from recurring.

In the last day, several federal courts, including the Eastern District of New York, have issued temporary stays and injunctions of the Executive Order, finding potential violations of the Constitution and the INA. *See Darweesh v. Trump,* 17-cv-480 (AMD) (E.D.N.Y., temporary

restraining order issued Jan. 28, 2017); *Aziz v. Trump*, 17-cv-116, (E.D. Va., temporary restraining order issued Jan. 28, 2017); *Tootkaboni v. Trump*, 17-cv-10154, ECF No. 6 (D. Mass, temporary restraining order issued Jan. 29, 2017). The decision in the Eastern District enjoins and restrains, "in any manner and by any means," the removal of any individuals with approved refugee applications or holders of valid immigrant and non-immigrant visas, and other individuals legally authorized to enter the United States from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen. *Darweesh*, 17-cv-480, Decision at *2, and is attached hereto at Exhibit B.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this court by 28 U.S.C. §§ 1331, 1361, 2241, 2243, and the Habeas Corpus Suspension Clause of the U.S. Constitution. This court has further remedial authority pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2.      Venue properly lies within the Eastern District of New York because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b).

3.      No petition for habeas corpus has previously been filed in any court to review Petitioner's cases.

## PARTIES

4.      Petitioner MORSHED is a lawful permanent resident of the United States.

5.      The U.S. Department of Homeland Security ("DHS") is a cabinet department of the United States federal government that controls United States border security, asylum processing, immigrations benefits, and emergency responses.

6.      U.S. Customs and Border Protection ("CBP") is an agency within DHS with the primary mission of detecting and preventing the unlawful entry of persons and goods into the United States.

7.      Respondent JOHN KELLY is the Secretary of DHS.  Secretary KELLY has immediate custody of Petitioner. He is sued in his official capacity.

8.      Respondent KEVIN K. MCALEENAN is the Acting Commissioner of CBP. Acting Commissioner MCALEENAN has immediate custody of Petitioner. He is sued in his official capacity.

9.      Respondent JAMES T. MADDEN is the Director of the New York Field Office of CBP, which has immediate custody of Petitioner.  He is sued in his official capacity.

10.     Respondent DONALD TRUMP is the President of the United States.  He is sued in his official capacity.

## STATEMENT OF FACTS

**President Trump's January 27, 2017 Executive Order**

11.     On January 20, 2017, DONALD TRUMP was inaugurated as the forty-fifth President of the United States.

12.     On January 27, 2017, President TRUMP signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," which is attached hereto as Exhibit A and is hereinafter referred to as the "EO."

13.     Citing the threat of terrorism committed by foreign nationals, the EO directs a variety of changes to the manner and extent to which non-citizens may seek and obtain

admission to the United States, particularly (although not exclusively) as refugees.  Among other things, the EO imposes a 120-day moratorium on the refugee resettlement program as a whole; proclaims that "that the entry of nationals of Syria as refugees is detrimental to the interests of the United States," and therefore "suspend[s]" indefinitely their entry to the country; similarly proclaims that "the entry of more than 50,000 refugees in fiscal year 2017 would be detrimental to the interests" of the country.

14.     Most relevant to the instant action is Section 3(c) of the EO, in which President TRUMP proclaims "that the immigrant and nonimmigrant entry into the United States of aliens from countries referred to in section 217(a)(12) of the INA, 8 U.S.C. 1187(a)(12), would be detrimental to the interests of the United States," and that he is therefore "suspend[ing] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order," with narrow exceptions not relevant here.

15.     There are seven countries that fit the criteria in 8 U.S.C. § 1187(a)(12): Iraq, Iran, Libya, Somalia, Sudan, Syria, and Yemen.  According to the terms of the EO, therefore, the "entry into the United States" of non-citizens from those countries is "suspended" from 90 days from the date of the EO.

**Petitioner MORSHED**

16.     On information and belief, Petitioner was born on August 28, 1990 in Shanaa, Yemen.  On information and belief he became a legal permanent resident of the United States on September 29, 2009.  On information and belief, Petitioner resides permanently in Norfolk, Virginia.

17.     On information and belief, Petitioner arrived in New York, NY from Doha, Qatar on Qatar Airways on January 29, 2017.  On information and belief, Petitioner flew from Doha to New York on Qatar Airways Flight QR 701, and landed at JFK Airport on January 29, 2017, at or about 2:15pm.  On information and belief, Petitioner planned to stay with his uncle in Brooklyn, NY for two days, after which Petitioner intended to return home to Norfolk. Petitioner was attempting to exit JFK Airport when he was detained by CBP.

18.     On information and belief, Petitioner was outside of the United States for approximately five months to visit family, and did not abandon his lawful permanent resident status.

19.     Petitioner is not being permitted to meet with counsel who are present at JFK.

20.     Upon knowledge and belief, Petitioner remains in the custody of CBP at JFK Airport.

## CAUSES OF ACTION

## COUNT ONE

## VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

22.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

23.     Under Section 101(a)(13)(C) of the Immigration and Nationality Act, a Lawful Permanent Resident returning from a brief trip abroad is not regarded as seeking an admission to the United States except in one of six circumstances enumerated by statute. The Petitioner does

not fall within any of those enumerated circumstances and cannot be regarded as seeking an admission to the United States.

## COUNT TWO

## VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT

24. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

25. Under Section 240(c)(2) of the Immigration and Nationality Act, the Department of Homeland Security bears the burden of proving that the Petitioner is removable from or inadmissible to the U.S. Petitioner cannot be deprived or constructively deprived of his Lawful Permanent Residence without a full and fair proceeding at which the Department of Homeland Security bears the burden of proof and meets that burden through clear and convincing evidence that the Petitioner is inadmissible, if an arriving alien, or removable.

## COUNT THREE
## FIRST AMENDMENT – ESTABLISHMENT CLAUSE

35. Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

36. The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity. The EO therefore violates the Establishment Clause of the First Amendment by not pursuing a course of neutrality with regard to different religious faiths.

## COUNT FOUR

## THE IMMIGRATION AND NATIONALITY ACT, THE CONVENTION AGAINST TORTURE, THE FOREIGN AFFAIRS REFORM AND RESTRUCTURING ACT OF 1998, IMPLEMENTING REGULATIONS [*ACCARDI* DOCTRINE]

37.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

38.     The Immigration and Nationality Act and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note), entitles Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief. These provisions also entitle Petitioner to a grant of withholding of removal and CAT relief upon a showing that he meets the applicable legal standards. Respondents' actions in seeking to return Petitioner to Yemen, taken pursuant to the EO, deprives Petitioner of his statutory and regulatory rights.

39.     Respondents' actions in seeking to expel Petitioner, taken pursuant to the EO, deprives Petitioner of his statutory and regulatory rights in violation of *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Respondents' failure to follow the required regulations prejudicially

deprived plaintiffs of fundamental due process and statutory rights, and this denial of process was so egregious as to shock the conscience.

## COUNT FIVE
## FIFTH AMENDMENT – EQUAL PROTECTION

40.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

41.     The EO discriminates against Petitioner on the basis of his country of origin and religion, without sufficient justification, and therefore violates the equal protection component of the Due Process Clause of the Fifth Amendment.

42.     Additionally, the EO was substantially motivated by animus toward—and has a disparate effect on—Muslims, which also violates the equal protection component of the Due Process Clause of the Fifth Amendment. *Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.*, 438 F.3d 195, 204 (2d Cir. 2006); *Hunter v. Underwood*, 471 U.S. 222 (1985).

43.     Respondents have demonstrated an intent to discriminate against Plaintiffs on the basis of religion through repeated public statements that make clear the EO was designed to prohibit the entry of Muslims to the United States. *See* Michael D. Shear & Helene Cooper, *Trump Bars Refugees and Citizens of 7 Muslim Countries,* N.Y. Times (Jan. 27, 2017), ("[President Trump] ordered that Christians and others from minority religions be granted priority over Muslims."); Carol Morello, *Trump Signs Order Temporarily Halting Admission of Refugees, Promises Priority for Christians*, Wash. Post (Jan. 27, 2017).

44.     Applying a general law in a fashion that discriminates on the basis of religion in this way violates Petitioner's rights to equal protection under the Fifth Amendment Due Process Clause. *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999); *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). Petitioner satisfies the Supreme Court's test to determine whether a facially neutral law – in this case, the EO and federal immigration law – has been applied in a discriminatory fashion. The Supreme Court requires an individual bringing suit to challenge the application of a law to bear the burden of demonstrating a "prima facie case of discriminatory purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-7 (1977). This test examines the impact of the official action, whether there has been a clear pattern unexplainable on other grounds besides discrimination, the historical background of the decision, the specific sequence of events leading up to the challenged decision, and departures from the normal procedural sequence. *Id.*

45.     Here, President DONALD TRUMP and senior staff have made clear that EO will be applied to primarily exclude individuals on the basis of their national origin and being Muslim. *See, e.g.*, sources cited, *supra* ¶ 43; Donald J. Trump, *Donald J. Trump Statement On Preventing Muslim Immigration*, (Dec. 7, 2015), https://www.donaldjtrump.com/press-releases/donald-j.-trump-statement-on-preventing-muslim-immigration ("Donald J. Trump is calling for a total and complete shutdown of Muslims entering the United States until our country's representatives can figure out what is going on."); Abby Phillip and Abigail Hauslohner, *Trump on the Future of Proposed Muslim Ban, Registry: 'You know my plans'*, Wash. Post (Dec. 22, 2016). Further, the President has promised that preferential treatment will

be given to Christians, unequivocally demonstrating the special preferences and discriminatory impact that the EO has upon Petitioner. *See* sources cited, *supra* ¶ 43.

46. Thus, Respondents have applied the EO with forbidden animus and discriminatory intent in violation of Petitioner's equal protection rights under the Fifth Amendment.

## COUNT SIX
## ADMINISTRATIVE PROCEDURE ACT

47.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48.     Respondents detained and mistreated Petitioner solely pursuant to an executive order issued on January 27, 2017, which expressly discriminates against Petitioner on the basis of his country of origin and was substantially motivated by animus toward Muslims. *See supra* Count Five.

49.     The EO exhibits hostility to a specific religious faith, Islam, and gives preference to other religious faiths, principally Christianity.

50.     The INA forbids discrimination in issuance of visas based on a person's race, nationality, place of birth, or place of residence. 8 U.S.C. § 1152(a)(1)(A).

51.     The INA and implementing regulations, including 8 U.S.C. § 1225(b)(1) (expedited removal), 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158 (asylum), and 8 U.S.C. § 1231(b)(3) (withholding of removal), and the United Nations Convention Against Torture ("CAT"), implemented in the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998)

(codified at 8 U.S.C. § 1231 note), entitle Petitioner to an opportunity to apply for asylum, withholding of removal, and CAT relief.

52.     Respondents' actions in detaining and mistreating Petitioner were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of APA § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, in violation of APA § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of APA § 706(2)(C); and without observance of procedure required by law, in violation of § 706(2)(D).

## COUNT SEVEN
## RELIGIOUS FREDOM RESTORATION ACT

53.     Petitioner repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     The EO will have the effect of imposing a special disability on the basis of religious views or religious status, by withdrawing an important immigration benefit principally from Muslims on account of their religion. In doing so, the EO places a substantial burden on Petitioners' exercise of religion in a way that is not the least restrictive means of furthering a compelling governmental interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners pray that this Court grant the following relief:

(1)     Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner;

(2)     Issue an injunction ordering Respondents not to detain any individual solely on the basis

of the EO;

(3)     Enter a judgment declaring that Respondents' detention of Petitioner is and will be

unauthorized by statute and contrary to law;

(4)     Award Petitioner reasonable costs and attorney's fees; and

(5)     Grant any other and further relief that this Court may deem fit and proper.

DATED: January 29, 2017
Brooklyn, New York

                                        Respectfully submitted,

                                        *s/ Jonathan Schoepp-Wong*

                                        Jonathan Schoepp-Wong
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, New York 10022
                                        Telephone: (212) 446-4800
                                        Facsimile: (212) 446-4900